Donald J. OWENS, Appellant,

v.

**FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE CO., Respondent.**

No. 82–486.

Supreme Court of Minnesota.

Jan. 7, 1983.

R.M. Bracewell, St. Paul, for appellant.

Meagher, Geer, Markham, Anderson, Adamson Flaskamp & Brennan and James F. Roegge, Minneapolis, for respondent.

SIMONETT, Justice.

This case presents the issue of whether former Minn.Stat. § 72A.149 (1969) automatically increased the limits of uninsured motorist coverage, as of January 1, 1971, for auto liability insurance policies then in force but issued prior to that date. The trial court held that the limits were not increased. We agree and affirm.

Appellant-plaintiff Donald J. Owens was seriously injured in a motor vehicle accident on June 18, 1971. He commenced this action against his own insurer, defendant Federated Mutual Implement and Hardware Insurance Company, for uninsured motorist benefits. Two issues were presented to the trial court: (1) whether Owens could stack his policy coverage with Federated Mutual; and (2) whether former Minn.Stat. § 72A.149 (1969) mandated an automatic increase in the uninsured motorist limits. The trial court allowed stacking but denied the automatic increase. Federated Mutual does not appeal the ruling on stacking, so we have here only the issue of an increase in the limits.

Federated Mutual renewed its policy to Owens on December 10, 1970, for a 1-year period with the next renewal date scheduled for December 10, 1971. The policy covered four motor vehicles. As to each vehicle, there was bodily injury liability coverage of $100,000 per person and $300,000 per accident and uninsured motorist coverage of $10,000 per person and $20,000 per accident. On June 18, 1971, Owens had his auto accident.

At the time Federated Mutual issued its renewal on December 10, 1970, Minn.Stat. § 72.149, subd. 2 (1969), read:

No automobile liability or motor vehicle liability policy of insurance * * * *shall be delivered or issued for delivery* in this state * * * unless coverage is provided therein or supplemental thereto, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *; provided, that the named insured shall have the right to reject in writing such coverage; and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer. *The policy limits of the coverage required to be offered by this section shall be as set forth in section 170.25, subdivision 3, until Jan-*

*uary 1, 1971; thereafter, at the option of the insured, the uninsured motorist limits shall be equal to those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry.*

(Emphasis added.)

Appellant Owens argues this statutory language means that, as of January 1, 1971, all policies of insurance then outstanding or thereafter issued or delivered for issuance in Minnesota were required to have uninsured motorist coverage equal to the bodily injury limits of the policy, unless otherwise waived by the policyholder in writing. So, although Owens' policy was issued to him prior to January 1, 1971, as of that date, his uninsured motorist coverage automatically increased from $10,000/20,000 to $100,-000/300,000.

Appellant arrives at this conclusion by arguing that this is the plain meaning of the second sentence of the statute. The second sentence, says appellant, can only be read to mean that the uninsured motorist policy limits shall be $10,000/20,000 (the amounts designated by section 170.25, subd. 3) until January 1, 1971, but "thereafter" shall be increased. Appellant points out the word "thereafter" is not qualified in any way; for example, the statute does not say, as it might have, that "thereafter, at the first renewal date," the coverage shall be increased.

On the other hand, respondent Federated Mutual says the second sentence cannot be read without reference to the sentence that precedes it. The first sentence states that no auto liability policy "shall be delivered or issued for delivery" unless uninsured motorist coverage is provided. This language, says respondent, necessarily qualifies the second sentence; the second sentence merely defines the amount of coverage which must be offered in policies that are delivered or issued. Consequently, Federated Mutual takes the position that on December 10, 1970, when it issued its renewal policy with $10,000/20,000 uninsured motorist limits, it was then in compliance with the law, for that is all the coverage that was then

required, and that it was not required to offer its insured increased levels of coverage until the first renewal date on December 10, 1971.

■ A statute should ordinarily be construed as a whole to harmonize all its parts and, whenever possible, no word, phrase or sentence should be deemed superfluous, void or insignificant. *Anderson v. Commissioner of Taxation,* 253 Minn. 528, 533, 93 N.W.2d 523, 528 (1958). We agree with the trial court that "the second sentence of Subdivision 2 should not be read in isolation from the first." When the two sentences are read together, as they must be, the legislative intent is clear: only policies delivered or issued from and after January 1, 1971, must provide, at the option of the insured, uninsured motorist coverage equal to the bodily injury liability limits. We so hold.

Appellant Owens contends, however, that a 1971 amendment to Minn.Stat. § 72A.149 (1969) adds support to his position. Minn. Stat. § 65B.22, subd. 8 (1971) (§ 72A.149 revised and renumbered), provides:

> Beginning January 1, 1972, any company issuing a policy to an insured for the first time or for the first time after such date effects the renewal of a policy previously issued shall include [the uninsured motorist coverage specified].

Since this language was absent from section 72A.149 (1969), appellant Owens argues that the legislature must originally have intended section 72A.149 to have immediate effect upon all then-existing policies and that the amendment was subsequently added to change this original intent and to provide for the increase only upon issuance or renewal of a policy. This argument, however, ignores the rule of statutory construction just discussed. Moreover, it is just as plausible that the legislature was not changing its intent but only making it even more explicit.

There is no suggestion in the record, we might add, that a higher premium was required of or paid by Owens during 1971. It does not seem fair to us to permit Owens to

benefit from an increased coverage which he had not expected and for which he had not paid.

■ Finally, we agree with the trial court, and so hold, that the phrase "delivered or issued for delivery" in section 72A.149 (1969) includes renewals of existing policies. As the trial court observes, the 1971 amendment specifically referred to renewals to make certain that an overly technical interpretation of the "delivered or issued for delivery" phrase did not release insurers from their obligation to offer their policyholders increased protection on renewals as well as on issuance of new policies.

Affirmed.

COYNE, J., took no part in the consideration or decision of this case.